MOORE, Chief Justice
(dissenting).
Marvin Earl Pines was convicted of trafficking in cannabis, a violation of § 13A-12-231(1)(a), Ala.Code 1975, and was sentenced as a habitual offender to life imprisonment. The Court of Criminal Appeals affirmed Pines’s conviction and sentence, without an opinion. Pines v. State (No. CR-12-0856, March 21, 2014), — So.3d - (Ala.Crim.App.2014) (table). This Court initially granted certiorari review; it now quashes the writ. Because I believe Pines was entitled to a judgment of acquittal on the ground of entrapment, I respectfully dissent.
On the morning of September 16, 2011, Larry Wells, a confidential informant working with the Montgomery Police Department, contacted Cpl. M.K Webster, an officer with the Montgomery Police Department, informing Cpl. Webster that Pines had agreed to sell Wells three pounds of marijuana. Pines and Wells ultimately arranged for the exchange to take place in the parking lot of a Winn-Dixie grocery store on the Atlanta Highway in Montgomery. Once Pines arrived, the police, who were watching from a distance, moved in and arrested Pines.. The police found approximately three pounds of marijuana in Pines’s vehicle.
Pines was indicted for trafficking in cannabis, a violation of § 13A-12-231(l)(a), Ala.Code 1975. At trial, Cpl. Webster testified that he had had sufficient evidence to charge Wells with distribution of marijuana in an earlier case but that Wells had agreed to serve as a confidential informant in lieu of prosecution. Neither the State nor Pines called Wells as a witness. At the close of the State’s case-in-chief, Pines moved for a judgment of acquittal on the ground of entrapment, which motion was denied.
Pines testified in his own defense. According to Pines, Wells had telephoned *464 him four or five times on the evening of September 15, 2011, asking Pines to sell him three pounds of marijuana. Pines testified that he had refused each time, explaining that he could not find three pounds of marijuana. According to Pines, Wells telephoned him again at approximately 9:30 a.m. on September. 16, 2011, asking Pines to sell him three pounds of marijuana, and Pines again refused. Pines testified that Wells telephoned him yet again at around 11:00 a.m. on September 16, 2011, and that, at that point, Pines finally agreed to sell him the marijuana he was seeking. Pines testified that his job paid only between $250 and $300 per week and that the thought of the extra money ultimately led him to agree to sell Wells the marijuana. Pines further testified that, after agreeing to sell Wells the marijuana, he acquired three pounds of marijuana from a friend of his, who was a drug dealer, and then went to meet Wells. Pines admitted that he had prior drug-related convictions, but he testified that the maximum amount of marijuana he had sold previously was one-half of a pound.
At the close of his case-in-chief, Pines moved again for a judgment of acquittal on the ground of entrapment. The trial court again denied Pines’s motion, but it instructed the jury on the defense of entrapment. The jury returned a guilty verdict. Pines was sentenced, as a habitual offender, to life imprisonment.[1] Pines was also ordered to pay a $25,000 fine, court costs, a $100 fine to the Department of Forensic Sciences, and a $50 crime-victims-compensation assessment.
On appeal, Pines’s court-appointed trial counsel filed a no-merit brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).[2] As part of the Anders procedure, the Court of Criminal Appeals issued an order, offering Pines the opportunity to present pro se any issues he wanted that court to review, but he did not reply. After examining the record and holding that there was “no basis for reversing the judgment of the trial court,” the Court of Criminal Appeals affirmed Pines’s conviction and sentence in an unpublished memorandum. Pines v. State (No. CR-12-0856, March 21, 2014), — So.3d - (Ala.Crim.App.2014) (table). On April 2, 2014, the Court of Criminal Appeals appointed new counsel to represent Pines on rehearing. Pines filed his application for rehearing on April 21, 2014, which the Court of Criminal Appeals overruled on April 24, 2014. Pines then petitioned this Court for a writ of certiorari, which this Court granted on June 16, 2014.
This Court reviews a trial court’s order denying a motion for a judgment of acquittal as follows:
“‘Appellate courts are limited in reviewing a trial court’s denial of a motion for judgment of acquittal grounded on insufficiency.’ McFarland v. State, 581 So.2d 1249, 1253 (Ala.Crim.App.1991). ‘The standard of review in determining sufficiency of evidence is whether evidence existed at the time of [the defendant’s] motion for acquittal was made, from which the jury could by fair inference find the [defendant] guilty.’ Linzy v. State, 455 So.2d 260, 261 (Ala.Crim. App.1984) (citing Stewart v. State, 350 So.2d 764 (Ala.Crim.App.1977), and Hayes v. State, 395 So.2d 127 (Ala.Crim. *465 App.), writ denied, 395 So.2d 150 (Ala. 1981)). In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the State. Linzy, supra.”
Ex parte Burton, 783 So.2d 887, 890-91 (Ala.2000) (alterations in the original).
Pines argues that the decision of the Court of Criminal Appeals conflicts with Davis v. State, 570 So.2d 791 (Ala.Crim.App.1990). In Davis, a government agent induced an informant to persuade a third party to set up a drug transaction with Ricky Davis. Davis kept refusing to participate in the transaction, but he Anally agreed after he was telephoned on a daily basis for about a week. 570 So.2d at 792. Davis was arrested when the transaction occurred; he was ultimately convicted of unlawful distribution. Id.
Before the Court of Criminal Appeals, Davis argued that the evidence at trial was insufficient to negate his defense of entrapment. The court defined “entrapment” as “ ‘the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer.’ ” 570 So.2d at 798 (quoting Sorrells v. United States, 287 U.S. 435, 454, 53 S.Ct. 210, 77 L.Ed. 413 (1932)). Alabama follows the “subjective approach” in determining whether an entrapment defense exists. Id.
“A two-step test is used under the subjective approach: the first inquiry is whether or not the offense was induced by a government agent; and the second is whether or not the defendant was predisposed to commit the type of offense charged. A defendant is considered predisposed if he is ‘ready and willing to commit the crimes such as are charged in the indictment, whenever opportunity was afforded.’ ”
570 So.2d at 793 (quoting 1 Wayne La-Fave, Substantive Criminal Law § 5.2(b) (1986)).
Regarding the proper allocation of the burden of proof when the entrapment defense is raised, the Davis court stated:
“ ‘The defendant must first come forward with evidence sufficient to raise a jury issue “that the Government’s conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it.” United States v. Mosley, 496 F.2d 1012, 1014 (5th Cir.l974)[,] citing Pierce v. United States, 414 F.2d 163, 168 (5th Cir.1969). Once such issue is raised, the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the charged offense. Id. See also United States v. Gomez-Rojas, 507 F.2d 1213, 1218 (5th Cir.1975).’ ”
Davis, 570 So.2d at 795 (quoting United States v. Dickens, 524 F.2d 441, 444 (5th Cir.1975)).
The Court of Criminal Appeals first considered whether Davis had been induced by the government agent to arrange the drug transaction. Citing Sorrells v. United States, 287 U.S. 435, 442, 53 S.Ct. 210, 77 L.Ed. 413 (1932), the court provided the following test for determining whether a defendant has been induced:
“In Sorrells, supra, the United States Supreme Court articulated the ‘origin of intent test.’ This test permits invocation of the entrapment defense ‘when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.’ Sorrells, supra, 287 U.S. at 442, 53 S.Ct. at 212-13.”
*466 570 So.2d at 793. After holding that the origin-of-intent test was broad enough to encompass inducement by an unsuspecting middleman, the court reasoned that the crime was “the creature of [Agent Cosey’s] purpose” and that, therefore, Davis had been induced by the government agent. Davis, 570 So.2d at 794 (alteration in the original).
Turning to the second step of the test, the Davis court analyzed whether Davis was predisposed to commit the offense:
“In the case at bar, it is undisputed that the transaction complained of was not initiated by the appellant. Indeed, the appellant rebuffed the agent’s advances on numerous occasions before finally giving in so that they would cease ‘bugging’ him. ‘It is the response of the target when the enterprise is initially proposed that can tell most about the individual’s predisposition. In many entrapment cases, the accused exhibits reluctance, and the inducing agent or private individual applies pressure or persuasion, at the outset.’ Note, Entrapment Through Unsuspecting Middlemen, 95 Harv. L.Rev. 1139 (1982). (Footnotes omitted.)”
570 So.2d at 795-96. The court also noted that there was no evidence indicating that Davis had been a drug dealer, that Davis did not know where to procure drugs to sell, and that Davis did not make any profit off the sale. 570 So.2d at 796. Accordingly, the court reversed Davis’s conviction and rendered a judgment in his favor.
Applying Davis to the present case, the first issue is whether Wells induced Pines to commit the offense. The evidence tended to show that Wells, the government agent, initiated the transaction with Pines. According to Pines, Wells telephoned him four or five times on the evening of September 15, 2011, and each time Pines refused to sell Wells three pounds of marijuana. Pines testified that on the morning of September 16, 2011, Wells telephoned Pines twice more, and on the second telephone call Pines finally agreed to sell Wells the marijuana. Thus, the crime was “the creature of [Wells’s] purpose.” Davis, 570 So.2d at 794.
The State argues that Pines was not induced because, it argues, he actively participated in arranging the exchange once he agreed to do it and that, therefore, at the very least, the evidence was conflicting and the issue properly went to the jury. I believe the State misapprehends the inducement prong of the entrapment defense. Under the origin-of-intent test, the relevant inquiry is whether the crime was “the creature of the [government agent’s] purpose.” Davis, 570 So.2d at 794. In this case, the evidence showed that the transaction was Wells’s idea. Because Pines “committed the offense as a result of [Wells’s] actions,” Davis, 570 So.2d at 794, I believe Pines was induced to commit the offense of trafficking in cannabis.
The next issue is whether Pines was predisposed to commit the offense. Like the defendant in Davis, Pines initially refused to commit the offense when the government agent sought to induce him. Further, like the defendant in Davis, Pines kept refusing to commit the offense when the government agent kept telephoning him. Pines refused four or five times on September 15, 2011, and once more on September 16, 2011, before finally giving in on the sixth or seventh telephone call, thus making Pines’s response similar to Davis’s. Although Pines (unlike Davis) had a familiarity with drugs, Pines testified that he had never sold three pounds of marijuana and that he had never sold more than a half pound of marijuana at one time.
*467 Moreover, Pines repeatedly testified that he told Wells he could not locate three pounds of marijuana. In my opinion, it is impossible to prove that a defendant is “ready and willing” to commit the offense of trafficking in cannabis, which involves selling at least 2.2 pounds of marijuana, § 13A-12-231(l)(a), Ala.Code 1975, if the defendant cannot locate the amount of marijuana necessary to complete the offense and makes that known to the government agent. See Davis, 570 So.2d at 795 (holding that the accused must be “ready and willing ” to commit the crime). If Pines was unable to perform as requested, then he certainly could not be ready to commit the crime. Just as intoxication can negate the ability to form the requisite intent to commit a crime, see Lee v. State, 439 So.2d 818, 821 (Ala.Crim.App.1983), so the inability to perform can negate the requisite readiness to commit a crime. Given the evidence above, I am persuaded that a jury could not find beyond a reasonable doubt that Pines was predisposed to commit the crime of trafficking in cannabis.
Aside from the merits, the State argues that the writ is due to be quashed for two reasons: (1) Pines did not raise the entrapment issue in his initial brief on appeal, and (2) Pines allegedly does not comply with the procedural requirements of Rule 39, Ala. R.App. P., in making his conflict argument.
As to the State’s first argument, Pines’s counsel filed a no-merit brief in the Court of Criminal Appeals pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Anders provides the following procedure when appellate counsel finds his or her client’s appeal to be without merit:
“[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel’s brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel’s request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.”
386 U.S. at 744 (emphasis added).
It is usually true that “[mjatters not argued in appellant’s brief on original submission cannot be raised for the first time on application for rehearing.” SouthTrust Bank v. Copeland One, L.L.C., 886 So.2d 38, 43 (Ala.2003) (opinion on application for rehearing). However, in this case, newly appointed counsel raised the issue of entrapment in the brief filed on application for rehearing in the Court of Criminal Appeals. Under Anders, the Court of Criminal Appeals had the responsibility to appoint new counsel for Pines before rehearing to argue the issue, which I believe has merit; it failed to do so. I do not agree that this Court should quash the writ on that basis.
Secondly, the State argues that Pines did not adequately state a conflict between the decision below and Davis. The essence of the State’s argument is that the Court of Criminal Appeals held in its unpublished memorandum merely that it had *468 “reviewed the record and [could] find no basis for reversing the judgment of the trial court.” Thus, according to the State, this Court would have to speculate as to why the Court of Criminal Appeals could find no reason to reverse Pines’s conviction. I disagree. Whatever the Court of Criminal Appeals’ reasons were for finding Pines’s entrapment defense meritless, that court nonetheless affirmed Pines’s conviction and sentence. That affirmance conflicted with Davis because Pines’s motion for a judgment of acquittal should have been granted.
Under the evidence discussed above, I do not believe that the State had sufficient evidence to prove beyond a reasonable doubt that Pines was predisposed to commit the crime of trafficking in cannabis for which he was convicted. If this is true, then “the law requires that [Pines’s] conviction be reversed and judgment rendered in his favor.” Davis, 570 So.2d at 796. I believe that Pines’s motion for a judgment of acquittal was due to be granted. I respectfully dissent.
MURDOCK, J., concurs.

. Pines had been - convicted three times of unlawful possession of marijuana in the first degree, a violation of § 13A-12-213, Ala.Code 1975, a Class C felony.

. Anders provides that if court-appointed appellate counsel "finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.” Anders, 386 U.S. at 744.